IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| LILLY GRACE DUNCAN and OLIVIA CLARK | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | CIVIL NO. 1:25-cv-00277-MR-WCM |
| ASHEVILLE ACADEMY FOR GIRLS, LLC (f/k/a SOLSTICE EAST, LLC and MAGNOLIA MILLS SCHOOL), WILDERNESS TRAINING & CONSULTING, LLC (d/b/a FAMILY HELP & WELLNESS, and JOHN DOE ENTITIES 1-10 | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |
| and | ) ) | |
| ASHEVILLE ACADEMY FOR GIRLS, LLC (F/K/A SOLSTICE EAST, LLC AND MAGNOLIA MILLS SCHOOL), | ) ) ) ) ) | |
| Third-Party Plaintiff, | ) ) | |
| vs. | ) ) | |
| WILLIAM CLARK, KRISTINA CLARK, CLAUDIA DUNCAN, AND HARLEY BROOKE DUNCAN, | ) ) ) ) | |
| Third-Party Defendants. | ) | |

**THIRD-PARTY DEFENDANTS' ANSWER TO THIRD-PARTY COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COME Third-Party Defendants Claudia Duncan, Harley Brooke Duncan, William

Clark, and Kristy Clark (collectively "Third-Party Defendants"), by and through their undersigned

counsel of record, and file this Answer to the Third-Party Complaint filed by Third-Party Plaintiff Asheville Academy for Girls, LLC (f/k/a Solstice East, LLC and Magnolia Mills School) (hereinafter "AAG"), and respond to the allegations in that Complaint as follows:

## I. GENERAL RESPONSE

Except as expressly admitted herein, Third-Party Defendants deny each and every allegation in the Third-Party Complaint. Any allegation not specifically addressed is denied.

### Responses to Specific Allegations

1.     Third-Party Defendants admit the allegations in paragraph 1.

2.     Third-Party Defendants admit the allegations in paragraph 2.

3.     Third-Party Defendants admit that AAG was a residential treatment facility organized under the laws of North Carolina with its principal place of business in Weaverville, North Carolina. Third-Party Defendants deny that AAG operated as represented or that it provided appropriate therapeutic services.

4.     Third-Party Defendants Bill Clark and Kristy Clark (collectively "the Clarks") admit that they are individuals residing in Fenwick Island, Delaware, and that they were the parents and legal guardians of Olivia Clark at the time of her enrollment at AAG in 2023 and 2024. Third-Party Defendants deny that they bear any legal responsibility for the abuse, neglect, and exploitation inflicted upon Olivia Clark by AAG.

5.     Third-Party Defendants Claudia Duncan and Harley Brooke Duncan (collectively "the Duncans") admit that they are individuals and that they were the parents and legal guardians of Lilly Duncan at the time of her enrollment at AAG in 2023 and 2024. Third-Party Defendants admit that Third-Party Defendant Claudia Duncan resides in Knoxville, Tennessee and that Third-Party Defendant Harley Brooke Duncan resides in Knoxville. Third-Party Defendants deny that

they bear any legal responsibility for the abuse, neglect, and exploitation inflicted upon Lilly Duncan by AAG.

6.     Third-Party Defendants admit the allegations in paragraph 6 regarding jurisdiction.

7.     Third-Party Defendants admit the allegations in paragraph 7 regarding supplemental jurisdiction.

8.     Third-Party Defendants admit the allegations in paragraph 8 regarding venue.

9.     Third-Party Defendants admit that the Clarks enrolled Olivia at AAG (then operating as Solstice East) on or about September 30, 2023. Third-Party Defendants affirmatively allege that the Clarks' decision to enroll Olivia was induced by AAG's fraudulent misrepresentations about the nature, quality, and safety of its services.

10.     Third-Party Defendants admit that the Clarks executed an enrollment agreement as a condition of Olivia's enrollment, a copy of which is attached as Exhibit A to the Third-Party Complaint. Third-Party Defendants deny that the indemnification provisions in the enrollment agreement are valid, enforceable, or applicable to AAG's intentional misconduct, gross negligence, fraud, and violations of law. Third-Party Defendants affirmatively allege that the indemnification provisions are void and unenforceable as against public policy.

11.     Third-Party Defendants admit that the quoted language appears in the Clark enrollment agreement (Exhibit A). Third-Party Defendants deny that this language is valid, enforceable, or applicable under the circumstances of this case for the reasons stated in paragraph 10 above.

12.     Third-Party Defendants admit that the Duncans enrolled Lilly at AAG (then operating as Solstice East) on or about January 18, 2023. Third-Party Defendants affirmatively

allege that the Duncans' decision to enroll Lilly was induced by AAG's fraudulent misrepresentations about the nature, quality, and safety of its services.

13. Third-Party Defendants admit that the Duncans executed an enrollment agreement as a condition of Lilly's enrollment, a copy of which is attached as Exhibit B to the Third-Party Complaint. Third-Party Defendants deny that the indemnification provisions in the enrollment agreement are valid, enforceable, or applicable to AAG's intentional misconduct, gross negligence, fraud, and violations of law. Third-Party Defendants affirmatively allege that the indemnification provisions are void and unenforceable as against public policy.

14. Third-Party Defendants admit that the quoted language appears in the Duncan enrollment agreement (Exhibit B). Third-Party Defendants deny that this language is valid, enforceable, or applicable under the circumstances of this case for the reasons stated in paragraph 13 above.

15. Third-Party Defendants admit that Plaintiffs Lilly Duncan and Olivia Clark have filed a complaint against AAG alleging the claims listed in paragraph 15. Third-Party Defendants affirmatively allege that these claims arise from AAG's systematic abuse, neglect, exploitation, and forced labor of Plaintiffs while they were minor residents at AAG's facility, all of which was caused solely by AAG's conduct.

## II.    CAUSE OF ACTION

### COUNT 1

**CONTRACTUAL INDEMNIFICATION AGAINST WILLIAM AND KRISTINA CLARK**

16. Third-Party Defendants repeat and reallege their responses to paragraphs 1 through 15 as if fully set forth herein.

17.     Third-Party Defendants deny the allegations in paragraph 17. The purported indemnification provisions in the Clark enrollment agreement are void and unenforceable as against North Carolina public policy and do not apply to AAG's intentional misconduct, gross negligence, fraud, and violations of federal and state law.

18.     Third-Party Defendants deny the allegations in paragraph 18. To the extent AAG has incurred or will incur legal fees, defense costs, or liability, such costs and liability result solely from AAG's own wrongful conduct, not from any actions by the Clarks.

19.     Third-Party Defendants deny the allegations in paragraph 19. The Clarks have no obligation to indemnify AAG under the circumstances of this case because:

- The indemnification provisions are void and unenforceable

- AAG's conduct constituted intentional torts, gross negligence, and violations of law not covered by any valid indemnification provision

- The Clarks did not cause, contribute to, or participate in the injuries to Olivia Clark

- All injuries to Olivia Clark were caused solely by AAG's conduct.

20.     Third-Party Defendants deny the allegations in paragraph 20. The Clarks have not "refused" to honor any valid obligation because no valid obligation exists under the circumstances of this case.

21.     Third-Party Defendants deny the allegations in paragraph 21. AAG's alleged damages, if any, result solely from its own wrongful conduct, not from any breach by the Clarks.

## COUNT 2

## CONTRACTUAL INDEMNIFICATION AGAINST CLAUDIA AND HARLEY BROOKE DUNCAN

22.     Third-Party Defendants repeat and reallege their responses to paragraphs 1 through 21 as if fully set forth herein.

23.     Third-Party Defendants deny the allegations in paragraph 23. The purported indemnification provisions in the Duncan enrollment agreement are void and unenforceable as against North Carolina public policy and do not apply to AAG's intentional misconduct, gross negligence, fraud, and violations of federal and state law.

24.     Third-Party Defendants deny the allegations in paragraph 24. To the extent AAG has incurred or will incur legal fees, defense costs, or liability, such costs and liability result solely from AAG's own wrongful conduct, not from any actions by the Duncans.

25.     Third-Party Defendants deny the allegations in paragraph 25. The Duncans have no obligation to indemnify AAG under the circumstances of this case because:

- The indemnification provisions are void and unenforceable

- AAG's conduct constituted intentional torts, gross negligence, and violations of law not covered by any valid indemnification provision

- The Duncans did not cause, contribute to, or participate in the injuries to Lilly Duncan

- All injuries to Lilly Duncan were caused solely by AAG's conduct.

26.     Third-Party Defendants deny the allegations in paragraph 26. The Duncans have not "refused" to honor any valid obligation because no valid obligation exists under the circumstances of this case.

27.     Third-Party Defendants deny the allegations in paragraph 27. AAG's alleged damages, if any, result solely from its own wrongful conduct, not from any breach by the Duncans.

## COUNT 3

## COMMON LAW INDEMNIFICATION AGAINST WILLIAM AND KRISTINA CLARK

28.     Third-Party Defendants repeat and reallege their responses to paragraphs 1 through 27 as if fully set forth herein.

29.     Third-Party Defendants deny the allegations in paragraph 29. AAG is not entitled to common law indemnification because:

- AAG's liability, if any, is not vicarious, passive, or secondary

- AAG's liability arises from its own direct, intentional, and grossly negligent conduct

- The Clarks' decision to enroll Olivia was reasonable and was induced by AAG's fraudulent misrepresentations

- The Clarks provided all relevant information to AAG at the time of enrollment

- The Clarks had no ability to supervise, direct, or protect Olivia from AAG's misconduct because AAG had complete custody and control over Olivia

- The injuries to Olivia were caused solely by AAG's conduct, not by any act or omission of the Clarks.

30.     Third-Party Defendants deny the allegations in paragraph 30. The Clarks are not liable to AAG under common law indemnification.

31.     Third-Party Defendants deny the allegations in paragraph 31. AAG's alleged damages, if any, result solely from its own wrongful conduct.

## COUNT 4

## COMMON LAW INDEMNIFICATION AGAINST CLAUDIA AND HARLEY BROOKE DUNCAN

32.     Third-Party Defendants repeat and reallege their responses to paragraphs 1 through 31 as if fully set forth herein.

33.     Third-Party Defendants deny the allegations in paragraph 33. AAG is not entitled to common law indemnification because:

- AAG's liability, if any, is not vicarious, passive, or secondary

- AAG's liability arises from its own direct, intentional, and grossly negligent conduct

- The Duncans' decision to enroll Lilly was reasonable and was induced by AAG's fraudulent misrepresentations

- The Duncans provided all relevant information to AAG at the time of enrollment

- The Duncans had no ability to supervise, direct, or protect Lilly from AAG's misconduct because AAG had complete custody and control over Lilly

- The injuries to Lilly were caused solely by AAG's conduct, not by any act or omission of the Duncans.

34.     Third-Party Defendants deny the allegations in paragraph 34. The Duncans are not liable to AAG under common law indemnification.

35.     Third-Party Defendants deny the allegations in paragraph 35. AAG's alleged damages, if any, result solely from its own wrongful conduct.

## COUNT 5

## CONTRIBUTION AGAINST WILLIAM AND KRISTINA CLARK

36.     Third-Party Defendants repeat and reallege their responses to paragraphs 1 through 35 as if fully set forth herein.

37.     Third-Party Defendants deny the allegations in paragraph 37. The Clarks are not liable for contribution because:

- AAG committed intentional torts, and contribution is not available to intentional tortfeasors under North Carolina law

- The Clarks were not joint tortfeasors with AAG

- The Clarks committed no negligent or wrongful conduct

- The injuries to Olivia were caused solely by AAG's conduct

- The Clarks' decision to enroll Olivia was reasonable and was induced by AAG's fraudulent misrepresentations.

38.     Third-Party Defendants deny the allegations in paragraph 38. Any fault in this matter belongs solely to AAG.

## COUNT 6

## CONTRIBUTION AGAINST CLAUDIA AND HARLEY BROOKE DUNCAN

39.     Third-Party Defendants repeat and reallege their responses to paragraphs 1 through 38 as if fully set forth herein.

40.     Third-Party Defendants deny the allegations in paragraph 40. The Duncans are not liable for contribution because:

- AAG committed intentional torts, and contribution is not available to intentional tortfeasors under North Carolina law

- The Duncans were not joint tortfeasors with AAG

- The Duncans committed no negligent or wrongful conduct

- The injuries to Lilly were caused solely by AAG's conduct

- The Duncans' decision to enroll Lilly was reasonable and was induced by AAG's fraudulent misrepresentations.

41. Third-Party Defendants deny the allegations in paragraph 41. Any fault in this matter belongs solely to AAG.

### III.  AFFIRMATIVE DEFENSES

42. Third-Party Defendants assert the following affirmative defenses to AAG's Third-Party Complaint. In asserting these defenses, Third-Party Defendants do not assume the burden of proof on any issue for which AAG bears the burden under applicable law. Third-Party Defendants reserve the right to amend these affirmative defenses as discovery proceeds.

#### FIRST AFFIRMATIVE DEFENSE (Failure to State a Claim)

43. AAG's Third-Party Complaint fails to state a claim upon which relief can be granted against Third-Party Defendants as a matter of law.

#### SECOND AFFIRMATIVE DEFENSE (Invalidity of Indemnification Provisions - Public Policy)

44. The indemnification provisions in the enrollment agreements are void and unenforceable as against North Carolina public policy because they purport to indemnify AAG for its own negligence, gross negligence, willful misconduct, intentional torts, fraud, and violations of federal and state law in providing care to vulnerable minors, which violates North Carolina's strong public policy protecting children from abuse and neglect.

#### THIRD AFFIRMATIVE DEFENSE (Indemnification Provisions Do Not Cover AAG's Conduct)

45.    Even if valid, the indemnification provisions do not apply because they do not expressly and unambiguously cover AAG's intentional misconduct, gross negligence, and violations of law. The injuries alleged arose from AAG's sexual exploitation of minors, provision of alcohol to minors, forced labor, and systematic abuse—not from any "inherent risks" of residential treatment covered by the agreements.

### FOURTH AFFIRMATIVE DEFENSE (Fraud in the Inducement)

46.    The enrollment agreements were procured through AAG's fraudulent misrepresentations about the nature, quality, and safety of its services. Under North Carolina law, AAG cannot enforce provisions of agreements it obtained through fraud.

### FIFTH AFFIRMATIVE DEFENSE (No Causation - AAG's Sole Fault)

47.    Third-Party Defendants did not cause, contribute to, or participate in any injuries to Plaintiffs. All injuries were caused solely and exclusively by AAG's conduct, including AAG's failure to protect residents from sexual exploitation, provision of alcohol to minors, forced labor, medical neglect, and systematic abuse.

### SIXTH AFFIRMATIVE DEFENSE (Active vs. Passive Negligence)

48.    AAG is not entitled to indemnification because AAG's conduct was active, not passive. Under North Carolina law, indemnification is only available when the party seeking indemnification was passively negligent. AAG had exclusive custody and control over Plaintiffs, AAG's employees committed the wrongful acts, and Third-Party Defendants had no ability to control or prevent AAG's misconduct.

### SEVENTH AFFIRMATIVE DEFENSE (Contribution Not Available - Intentional Torts)

49.    AAG is not entitled to contribution because the underlying Complaint alleges AAG committed intentional torts including fraud, intentional infliction of emotional distress, battery,

assault, and false imprisonment. Under N.C. Gen. Stat. § 1B-1(b), contribution is not available to intentional tortfeasors. Third-Party Defendants were not joint tortfeasors with AAG and committed no wrongful conduct.

## EIGHTH AFFIRMATIVE DEFENSE (Unconscionability)

50. The indemnification provisions are unconscionable contracts of adhesion imposed with gross disparity in bargaining power on parents seeking help for troubled children, attempting to shield AAG from all liability for any conduct no matter how egregious.

## NINTH AFFIRMATIVE DEFENSE (Breach of Contract by AAG)

51. AAG materially breached the enrollment agreements by failing to provide promised therapeutic services, employing unqualified staff, failing to provide appropriate medical care, subjecting residents to abuse, and exploiting residents through forced labor, which relieves Third-Party Defendants of any obligations under those agreements.

## TENTH AFFIRMATIVE DEFENSE (Illegality)

52. The indemnification provisions are unenforceable because they purport to shield AAG from liability for illegal conduct including violations of federal civil rights laws (42 U.S.C. § 1983), the Thirteenth Amendment, the Fair Labor Standards Act, the Trafficking Victims Protection Act, and North Carolina criminal laws against child abuse.

## ELEVENTH AFFIRMATIVE DEFENSE (Unclean Hands)

53. AAG comes to this Court with unclean hands and is not entitled to equitable relief because AAG engaged in fraud, systematically abused and exploited vulnerable minors, covered up reports of abuse, violated federal and state law, and now seeks to shift liability for its own egregious misconduct.

## TWELFTH AFFIRMATIVE DEFENSE (Reservation of Rights)

54.     Third-Party Defendants reserve the right to assert additional affirmative defenses as may become known through discovery and as permitted by the Federal Rules of Civil Procedure.

## COUNTERCLAIMS

COME NOW Third-Party Defendants, now Counter-Claimants, by and through their counsel of record, and assert the following counterclaims against Third-Party Plaintiff/Counter-Defendant Asheville Academy for Girls, LLC:

## I.     PARTIES

1.     Counter-Claimant **CLAUDIA DUNCAN** is a resident of Knoxville, TN and the mother of Plaintiff Lilly Grace Duncan.

2.     Counter-Claimant **HARLEY BROOKE DUNCAN** is a resident of Knoxville, TN and the parent of Plaintiff Lilly Grace Duncan.

3.     Counter-Claimants **BILL CLARK and KRISTY CLARK** (collectively "the Clarks") are residents of Fenwick Island, Delaware, and the parents of Plaintiff Olivia Clark.

4.     Counter-Defendant **ASHEVILLE ACADEMY FOR GIRLS, LLC** (f/k/a Solstice East, LLC and Magnolia Mills School) ("AAG") is a North Carolina limited liability company that operated a residential treatment facility at 530 Upper Flat Creek Road, Weaverville, North Carolina.

## II.     JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction) as they arise from the same case or controversy as the underlying action.

6.     Venue is proper in this district under 28 U.S.C. § 1391.

### III.   FACTUAL ALLEGATIONS COMMON TO ALL COUNTERCLAIMS

7.     Counter-Claimants incorporate by reference all factual allegations from the underlying Complaint (Doc. 1), which describes in detail the systematic abuse, neglect, and exploitation that occurred at AAG's facility.

**AAG's Fraudulent Representations**

8.     AAG held itself out as a legitimate therapeutic residential treatment center that would provide appropriate mental health treatment, educational services, and a supportive environment for adolescent girls with mental health needs.

9.     AAG's marketing materials, website, and communications with Counter-Claimants represented that:

- o    AAG employed qualified mental health professionals

- o    The facility provided evidence-based therapeutic treatment

- o    Residents would receive appropriate medical and psychiatric care

- o    The environment was safe and supportive

- o    Staff were properly trained and supervised

- o    Interventions were therapeutic rather than punitive

- o    The program would help residents address mental health issues

- o    The program would help residents with substance abuse recovery.

10.     These representations were material to Counter-Claimants' decisions to place their daughters at AAG's facility and to continue paying for services.

**The Enrollment Agreements**

11. Based on AAG's representations, Counter-Claimant Claudia Duncan entered into an Admissions Agreement with AAG dated January 18, 2023 (the "Duncan Agreement"), attached as Exhibit B to AAG's Third-Party Complaint.

12. Based on AAG's representations, Counter-Claimants Bill and Kristy Clark entered into an Admissions Agreement with AAG dated September 30, 2023 (the "Clark Agreement"), attached as Exhibit A to AAG's Third-Party Complaint.

13. Under both Agreements, Counter-Claimants agreed to pay substantial sums for AAG's services, believing they would receive the therapeutic treatment AAG represented.

14. The Duncan Agreement states that AAG "accepts for enrollment the above named student and promises to undertake and provide the following services for the student and sponsors: clinical, educational and academic services, room and board, nursing services (as needed), selected psychological and educational evaluations and assessments for the student, personal supervision..." (Duncan Agreement ¶ 9).

15. The Clark Agreement contains substantially identical promises. (Clark Agreement ¶ 9).

**AAG's Breaches and Misconduct**

16. Contrary to AAG's representations and contractual promises, AAG operated a facility that:

- Prioritized control and economic exploitation over therapeutic care

- Employed unqualified staff who were not properly screened, trained, or supervised

- Failed to provide appropriate mental health and substance abuse treatment

- Subjected residents to punitive rather than therapeutic interventions

- Failed to protect residents from sexual exploitation and abuse

- Provided alcohol to minor residents

- Subjected residents to medical neglect

- Forced residents to perform extensive unpaid labor for AAG's economic Benefit.

### Sexual Exploitation of Lilly Duncan

17.    AAG employed a staff member identified as "Gabe" who worked closely with Lilly Duncan during the first several months of her stay, establishing a relationship of trust and mentorship while she was a minor.

18.    After leaving AAG's employment, Gabe initiated inappropriate sexual contact with Lilly Duncan while she was still a minor and still a resident at AAG's facility.

19.    Gabe solicited and received inappropriate photographs from Lilly Duncan and explicitly acknowledged that he had harbored inappropriate feelings for her during his employment, stating that he "would always look at [her] ass or other parts of [her] body" while she was under his care.

20.    When another resident reported this inappropriate relationship to staff member Hannah Rees, who attempted to report it to AAG via text message, AAG instructed Hannah to "block the number" and not respond further.

21.    AAG deliberately failed to investigate this serious allegation or report it to Counter-Claimants or proper authorities.

### Provision of Alcohol to Olivia Clark

22.    On or about April 6, 2024, AAG staff member "Jami Taylor" provided Olivia Clark, who was then a minor, with Gatorade containing vodka.

23.    When Olivia immediately tasted alcohol and reported it to another staff member, AAG terminated Jami from employment.

24.     Despite terminating Jami, AAG's administration attempted to lie and manipulate Olivia by claiming there was no alcohol in the beverage, even though the staff member had been fired for this exact conduct.

**Systematic Forced Labor**

25.     AAG systematically exploited minor residents, including Lilly Duncan and Olivia Clark, by requiring them to perform extensive unpaid labor through a formalized system of mandatory "Community Roles" and daily chores.

26.     AAG operated a comprehensive unpaid labor program disguised as therapeutic programming, including:

- Sixteen (16) distinct "Community Roles" with detailed job descriptions equivalent to paid positions

- Formal training requirements where outgoing residents trained their replacements

- A systematic "check system" for monitoring work performance

- Staff oversight and approval processes for job assignments

27.     The labor performed by residents included:

- Kitchen operations (food preparation, service, dishwashing, cleaning)

- Facility maintenance (cleaning, vacuuming, window washing)

- Animal care (feeding horses, mucking pastures)

- Specialized roles equivalent to paid positions (Chef, Maintenance Supervisor, Quality Control Inspector, Barn Assistant, Wrangler)

- Weekend deep cleaning operations

- Supply management and administrative functions.

28.     Residents received no wages, compensation, or educational credit for this labor, despite performing work equivalent to multiple paid staff positions.

29.     The unpaid labor performed by residents directly replaced paid employees and reduced AAG's operational costs.

30.     Residents who failed to perform assigned labor tasks faced systematic punishment through AAG's "intervention" system, including isolation and loss of privileges.

## Punitive Isolation Measures

31.     AAG employed a system of punitive isolation measures disguised as therapeutic "interventions," including:

- "Safety" interventions where residents were prohibited from speaking to anyone and required to remain within arm's length of a staff member at all times

- "Self-focus" interventions that prohibited residents from communicating with any other residents or staff

- "Call restrictions" that prevented residents from contacting their families.

32.     While AAG's handbook stated that "safety" interventions could last no longer than 72 hours, Lilly Duncan and Olivia Clark were frequently subjected to these restrictions for extended periods exceeding the stated maximum.

## Medical Neglect

33.     AAG consistently failed to provide appropriate medical care to residents, including:

- Refusing to take Olivia Clark to a doctor when she was severely ill for a week, only providing medical care after her mother (Counter-Claimant Kristy Clark) angrily emailed the facility.

## Other Misconduct

34.     AAG staff member "Scott" regularly made inappropriate sexual comments about residents' bodies and failed to maintain appropriate professional boundaries.

35.     AAG routinely violated its own written policies, including exceeding the 72-hour maximum for "safety" interventions.

36.     During the rebranding process from Solstice East to Magnolia Mills to Asheville Academy for Girls, AAG confiscated all resident handbooks, preventing residents from knowing their rights or holding AAG accountable to its stated policies.

**Counter-Claimants' Damages**

37.     As a direct result of AAG's conduct, Lilly Duncan has suffered:

- Post-Traumatic Stress Disorder (PTSD)
- Ongoing nightmares and flashbacks
- Sexual exploitation by AAG's staff member
- Medical neglect
- Educational disruption and delayed academic progress
- Difficulty forming healthy relationships
- Loss of trust in therapeutic institutions
- Economic exploitation through unpaid forced labor.


38.     As a direct result of AAG's conduct, Olivia Clark has suffered:

- Post-Traumatic Stress Disorder (PTSD)
- Being provided alcohol while a minor
- Medical neglect
- Psychological trauma from the punitive environment
- Educational disruption
- Loss of trust in therapeutic institutions
- Economic exploitation through unpaid forced labor.

39.     Counter-Claimants paid substantial sums to AAG for services that were not as represented and that instead caused severe harm to their daughters rather than providing therapeutic benefit.

40.     Counter-Claimants have incurred and will continue to incur expenses for medical treatment, therapy, and counseling for their daughters to address the trauma inflicted by AAG.

## IV.     <u>CAUSES OF ACTION</u>

### COUNT I - FRAUD AND FRAUDULENT INDUCEMENT

*(Against AAG)*

41.     Counter-Claimants incorporate by reference all preceding allegations.

42.     AAG made material representations of fact to Counter-Claimants regarding the nature, quality, and safety of the services it would provide, including that:

- AAG would provide appropriate therapeutic mental health treatment

- AAG would provide appropriate substance abuse treatment

- AAG employed qualified and properly supervised staff

- The facility environment was safe and supportive

- Interventions were therapeutic rather than punitive

- Residents would receive appropriate medical care

- The program would help residents address mental health issues.

43.     These representations were false when made.

44.     AAG knew these representations were false when made, or made them recklessly without knowing whether they were true or false.

45.     Specifically:

- AAG knew or recklessly disregarded that it employed unqualified staff who were not properly screened or supervised

- AAG knew or recklessly disregarded that staff member Gabe had inappropriate feelings toward minor residents

- AAG knew or recklessly disregarded that its "interventions" were punitive rather than therapeutic and exceeded its own stated time limits

- AAG knew or recklessly disregarded that it was systematically exploiting child labor rather than providing therapeutic programming

- AAG knew or recklessly disregarded that it was failing to provide appropriate medical care

- AAG ignored students advocacy for a voice in their care

- AAG restricted the number of support groups available and would cite schedule conflicts for groups Lilly would have benefitted from. Students frequently requested access to AA meetings which only happened a very few times.

46.     AAG made these representations with the intent to deceive Counter-Claimants and induce them to place their daughters at AAG's facility and pay for AAG's services.

47.     Counter-Claimants reasonably relied on AAG's representations in deciding to place their daughters at AAG's facility and continue paying for services.

48.     As a direct and proximate result of AAG's fraudulent representations, Counter-Claimants suffered damages including:

- Payment of substantial sums for services that were not as represented

- Expenses for medical and psychological treatment for their daughters' Injuries

- Emotional distress from witnessing their daughters' suffering

- Other economic and non-economic damages.

49.     AAG's conduct was willful, wanton, and in reckless disregard of Counter-Claimants' rights, warranting an award of punitive damages.

## COUNT II - BREACH OF CONTRACT

*(Against AAG)*

50.    Counter-Claimants incorporate by reference all preceding allegations.

51.    Counter-Claimants entered into valid, enforceable contracts with AAG (the Duncan Agreement and Clark Agreement).

52.    Under these contracts, AAG promised to provide "clinical, educational and academic services, room and board, nursing services (as needed), selected psychological and educational evaluations and assessments for the student, personal supervision, supervised use of recreational equipment and facilities..." (Duncan Agreement ¶ 9; Clark Agreement ¶ 9).

53.    AAG materially breached these contracts by:

- Failing to provide appropriate clinical and therapeutic services

- Employing unqualified staff

- Failing to provide appropriate nursing services and medical care

- Failing to provide appropriate supervision that protected residents from sexual exploitation and other harm

- Subjecting residents to punitive rather than therapeutic interventions

- Exploiting residents through forced labor rather than providing therapeutic Programming

- Failing to maintain a safe environment

- Providing alcohol to a minor resident.

54.    Counter-Claimants substantially performed their obligations under the contracts by paying the agreed-upon fees.

55.    As a direct and proximate result of AAG's breaches, Counter-Claimants suffered damages including:

- Payment of substantial sums for services that were not provided as promised

- Expenses for medical and psychological treatment for their daughters' injuries caused by AAG's breaches

- Other economic and non-economic damages.

## COUNT III - NEGLIGENT MISREPRESENTATION

*(Against AAG)*

56.     Counter-Claimants incorporate by reference all preceding allegations.

57.     In the alternative to Count I, AAG negligently made material misrepresentations of fact to Counter-Claimants regarding the nature, quality, and safety of its services.

58.     AAG made these representations in the course of its business as a residential treatment facility.

59.     AAG failed to exercise reasonable care or competence in obtaining or communicating this information.

60.     Counter-Claimants justifiably relied on AAG's representations in deciding to place their daughters at AAG's facility and continue paying for services.

61.     As a direct and proximate result of AAG's negligent misrepresentations, Counter-Claimants suffered the damages alleged in Count I.

## COUNT IV - UNFAIR AND DECEPTIVE TRADE PRACTICES (N.C. Gen. Stat. § 75-1.1)

*(Against AAG)*

62.     Counter-Claimants incorporate by reference all preceding allegations.

63.     AAG is engaged in commerce within the meaning of N.C. Gen. Stat. § 75-1.1.

64.     AAG engaged in unfair and deceptive acts and practices in commerce by:

- Misrepresenting the nature, quality, and safety of its services

- Failing to disclose the true nature of its program, including that it:

    o   Employed unqualified staff

o      Used punitive rather than therapeutic approaches

o      Subjected residents to extended isolation exceeding stated limits

o      Exploited residents through forced labor

o      Failed to protect residents from sexual exploitation

o      Failed to provide appropriate medical care

- Representing that residents would receive therapeutic treatment when AAG actually operated a control and labor-exploitation program

- Repeatedly rebranding to avoid accountability for its misconduct.

65. These acts and practices were unfair because they:

- Offended established public policy regarding child welfare and protection

- Were immoral, unethical, oppressive, and unscrupulous

- Caused substantial injury to Counter-Claimants and their daughters that they could not
reasonably avoid.

66. These acts and practices were deceptive because they had the capacity to deceive reasonable consumers, including Counter-Claimants.

67. These unfair and deceptive acts and practices were the proximate cause of Counter-Claimants' injuries and damages.

68. Counter-Claimants are entitled to treble damages under N.C. Gen. Stat. § 75-16, as well as attorneys' fees and costs.

**COUNT V - BREACH OF FIDUCIARY DUTY**

*(Against AAG)*

69. Counter-Claimants incorporate by reference all preceding allegations.

70. AAG stood in a fiduciary relationship to Counter-Claimants and their minor daughters.

71.     This fiduciary relationship arose from:

- The enrollment agreements, which gave AAG power of attorney over the minor children (Duncan Agreement ¶ 24; Clark Agreement ¶ 24)

- AAG's position *in loco parentis* to the minor children

- The special relationship of trust inherent in residential therapeutic care of vulnerable minors

- Counter-Claimants' reliance on AAG's superior knowledge and expertise regarding therapeutic treatment.

72.     As a fiduciary, AAG owed Counter-Claimants and their daughters the duties of utmost good faith, loyalty, and care.

73.     AAG breached its fiduciary duties by:

- Prioritizing its own economic interests over the welfare of residents

- Exploiting child labor to reduce operating costs

- Employing unqualified staff to save money

- Failing to protect residents from sexual exploitation

- Covering up reports of abuse to protect its reputation and business

- Subjecting residents to harmful punitive measures

- Failing to provide promised therapeutic services

- Repeatedly rebranding to avoid accountability.

74.     AAG's breaches of fiduciary duty were willful and in bad faith.

75.     As a direct and proximate result of AAG's breaches of fiduciary duty, Counter-Claimants suffered the damages previously alleged.

76.     AAG's breaches of fiduciary duty were willful, wanton, and in reckless disregard of Counter-Claimants' rights, warranting an award of punitive damages.

### COUNT VI - GROSS NEGLIGENCE

*(Against AAG)*

77.     Counter-Claimants incorporate by reference all preceding allegations.

78.     AAG owed Counter-Claimants and their daughters a duty to provide a safe environment and appropriate care.

79.     This duty was heightened due to:

- The vulnerability of the adolescent residents

- AAG's position *in loco parentis*

- The residential nature of the program giving AAG complete control over residents

- AAG's representations that it would provide appropriate therapeutic care.

80.     AAG's conduct constituted gross negligence, demonstrating wanton conduct carried out with conscious and reckless disregard for Counter-Claimants' rights and their daughters' safety.

81.     Specifically, AAG acted with gross negligence by:

- Failing to properly screen, hire, train, and supervise staff, resulting in the employment of individuals who sexually exploited residents, provided alcohol to minors, and made inappropriate sexual comments

- Deliberately failing to investigate or report the sexual exploitation of Lilly Duncan

- Instructing staff to cover up reports of abuse

- Subjecting residents to extended punitive isolation exceeding stated policy limits

- Systematically exploiting child labor

- Failing to provide appropriate medical care even when residents were severely ill

- Repeatedly rebranding to avoid accountability while continuing harmful practices.

82. AAG's grossly negligent conduct was the proximate cause of Counter-Claimants' damages.

83. AAG's gross negligence warrants an award of punitive damages under North Carolina law.

**COUNT VII - NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION**

*(Against AAG)*

84. Counter-Claimants incorporate by reference all preceding allegations.

85. AAG had a duty to exercise reasonable care in hiring, training, supervising, and retaining employees who would work with vulnerable minor residents.

86. AAG breached this duty by:

- Failing to properly screen prospective employees

- Hiring unqualified individuals to work with vulnerable minors

- Failing to adequately train staff on appropriate boundaries, therapeutic interventions, and mandatory reporting

- Failing to supervise staff adequately

- Maintaining inadequate staffing ratios

- Retaining employees after learning or having reason to know of their incompetence or dangerous propensities.

87. Specifically, AAG negligently:

- Hired or retained "Gabe," who sexually exploited Lilly Duncan, despite his having or developing inappropriate feelings toward minor residents

- Hired or retained "Jami Taylor," who provided alcohol to minor resident Olivia Clark

- Hired or retained "Scott," who made inappropriate sexual comments about Residents

- Failed to train staff on proper intervention protocols, resulting in extended isolation periods exceeding policy limits

- Failed to train staff on mandatory reporting, resulting in the cover-up of abuse reports.

88. AAG knew or should have known that these employees were incompetent or unfit for their positions.

89. These employees' actions were within the scope of their employment or were foreseeable based on their job duties.

90. As a direct and proximate result of AAG's negligent hiring, training, supervision, and retention, Counter-Claimants suffered the damages previously alleged.

## COUNT VIII - UNJUST ENRICHMENT

### *(Against AAG)*

91. Counter-Claimants incorporate by reference all preceding allegations.

92. Counter-Claimants conferred benefits upon AAG by paying substantial sums for residential treatment services.

93. AAG had knowledge of these benefits.

94. AAG voluntarily accepted and retained these benefits.

95. It would be inequitable and unjust for AAG to retain these benefits because:

- AAG did not provide the services it promised

- AAG's conduct was fraudulent and in bad faith

- AAG caused severe harm to Counter-Claimants' daughters rather than providing therapeutic benefit
- AAG exploited Counter-Claimants' daughters through forced labor while simultaneously charging Counter-Claimants for "therapeutic programming".

96.     Under principles of equity and good conscience, AAG should be required to make restitution to Counter-Claimants.

## COUNT IX – DECLARATORY JUDGMENT – INVALIDITY OF INDEMNIFICATION PROVISIONS (28 U.S.C. § 2201)

*(Against AAG)*

97.     Counter-Claimants incorporate by reference all preceding allegations.

98.     The enrollment agreements contain provisions purporting to require Counter-Claimants to indemnify AAG and hold it harmless from liability. (Duncan Agreement ¶ 11; Clark Agreement ¶ 11).

99.     Specifically, the agreements state: "Sponsor agrees to indemnify Solstice East from any and all actions, causes of actions, claims, demands, costs (including attorneys' fees), expenses, liabilities and charges, known or unknown arising out of or in connection with claims and/or actions relating to or brought by or on behalf of the student, including, without limitation, claims related to or arising out of the student's participation in the program." (*Id.*)

100.    An actual, justiciable controversy exists between Counter-Claimants and AAG regarding the validity and enforceability of these indemnification provisions.

101.    These indemnification provisions are void and unenforceable as against public policy because:

- They purport to indemnify AAG for its own negligence, gross negligence, and willful misconduct in caring for vulnerable minors

- They violate North Carolina's strong public policy protecting children from abuse and neglect

- They attempt to shield AAG from liability for violations of federal and state law, including civil rights violations, labor law violations, and trafficking laws

- They are unconscionable contracts of adhesion imposed on parents seeking help for their troubled children

- They are void under North Carolina law prohibiting agreements that indemnify against liability for negligence, recklessness, or intentional wrongdoing in residential care settings.

102.     Counter-Claimants are entitled to a declaratory judgment that these indemnification provisions are void and unenforceable.

## COUNT X - DECLARATORY JUDGMENT - NO DUTY TO INDEMNIFY OR CONTRIBUTION (28 U.S.C. § 2201)

*(Against AAG)*

103.     Counter-Claimants incorporate by reference all preceding allegations.

104.     AAG has filed a Third-Party Complaint seeking indemnification and/or contribution from Counter-Claimants for any liability AAG may have to Plaintiffs in the underlying action.

105.     An actual, justiciable controversy exists regarding whether Counter-Claimants have any duty to indemnify AAG or contribute to any liability AAG may have to Plaintiffs.

106.     Counter-Claimants have no duty to indemnify AAG because:

- Any purported indemnification provisions in the enrollment agreements are void and unenforceable for the reasons stated in Count IX

- Counter-Claimants did not cause, contribute to, or participate in AAG's Misconduct

- The injuries to Plaintiffs were caused solely by AAG's conduct

- AAG cannot seek indemnification for its own intentional wrongdoing, gross negligence, and willful misconduct

- Allowing indemnification would violate public policy protecting children From abuse.

107.     Counter-Claimants have no duty to contribute to AAG's liability because:

- Contribution is not available to an intentional tortfeasor

- AAG's conduct constituted intentional torts including fraud, intentional infliction of emotional distress, battery, assault, and false imprisonment

- Counter-Claimants did not commit any tort or wrongful act

- Counter-Claimants were not joint tortfeasors with AAG.

108.     Counter-Claimants are entitled to a declaratory judgment that they have no duty to indemnify AAG or contribute to any liability AAG may have to Plaintiffs.

## V.     PRAYER FOR RELIEF

WHEREFORE, Counter-Claimants respectfully request that this Court:

A. Enter judgment in favor of Counter-Claimants and against AAG on all counts;

B. Award Counter-Claimants compensatory damages in an amount to be determined at trial, including:

- Restitution of all amounts paid to AAG

- Medical and psychological treatment expenses for their daughters

- Other economic and non-economic damages.

C. Award Counter-Claimants punitive damages on Counts I, V, and VI;

D. Award Counter-Claimants treble damages under N.C. Gen. Stat. § 75-16 on Count IV;

E. Enter a declaratory judgment that:

- The indemnification provisions in the enrollment agreements are void and unenforceable (Count IX)

- Counter-Claimants have no duty to indemnify AAG or contribute to any liability AAG may have to Plaintiffs (Count X)

F. Award Counter-Claimants reasonable attorneys' fees and costs as provided by law, including under N.C. Gen. Stat. § 75-16;

G. Award Counter-Claimants pre- and post-judgment interest at the maximum rate allowed by law;

H. Dismiss AAG's Third-Party Complaint with prejudice;

I. Grant such other and further relief as this Court deems just and proper.

## VI.    JURY DEMAND

Counter-Claimants hereby demand a trial by jury on all issues so triable as a matter of right.

**RESPECTFULLY SUBMITTED,**

/s/ *Ruth A. Sheehan*

RHINE LAW FIRM, P.C.
Ruth A. Sheehan, NCSB 48069
Email: ras@rhinelawfirm.com
Joel R. Rhine, NCSB 16028
Email: jrr@rhinelawfirm.com
1612 Military Cutoff Road, Suite 300
Wilmington, NC 28403
Tel: (910) 772-9960
Fax: (910) 772-9062

and

Gareth S. Purnell (Admitted *Pro Hac Vice*)
Simon B. Purnell (Admitted *Pro Hac Vice*)
**GRIFFIN PURNELL LLC**
2037 Airline Road, Suite 200
Corpus Christi, Texas 78412
(361) 262-1776
(361) 356-4348 Fax
gareth@griffinpurnell.com
simon@griffinpurnell.com
Service email: support@griffinpurnell.com

**ATTORNEYS FOR PLAINTIFFS/**
**THIRD-PARTY DEFENDANTS**

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 24th day of November, 2025, a true and correct copy of the foregoing document was filed electronically with the Court's ECF system for service to all counsel of record.

David L. Levy
Kristy M. D'Ambrosio
**GARDNER SKELTON, PLLC**
3746 N. Davidson Street
Charlotte, North Carolina 28205
dlevy@gardnerskelton.com
kdambrosio@gardnerskelton.com
*Attorneys for Defendant Wilderness*
*Training & Consulting, LLC*
*(d/b/a Family Help & Wellness) and*
*Defendant/Third-Party Plaintiff*
*Asheville Academy for Girls, LLC*
*(f/k/a Solstice East, LLC and Magnolia*
*Mills School)*

　　　　　　　　　　*/s/ Gareth S. Purnell*
　　　　　　　　　　　Gareth S. Purnell